Nicolas Olano (AK Bar # 2105042)
Nations Law Group
2525 Blueberry Road, Ste 207
Anchorage, AK 99503
nicolas@nationslawak.org
907-770-0909

Cindy Woods (NY Bar #5394226)
 (*pro hac vice* forthcoming)
ACLU of Alaska Foundation
1057 W. Fireweed Lane, Ste 207
Anchorage, AK 99503
907-258-0044

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **JEAN KASHIKOV,** | Case No. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **KRISTI NOEM**, in her official capacity as Secretary of the U.S. Department of Homeland Security; and | |
| **TODD LYONS**, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, | |
| Defendants. | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.       Foreign nonimmigrant students are allowed to remain in the United States for study or practical training related to their field of study after receiving an F-1 visa. An F-1 visa controls a student's entry into the country, *not* their continued lawful presence once admitted. Student and Exchange Visitor Information System ("SEVIS"), a database used by both the United States Department of Homeland Security ("DHS") and by universities, tracks the compliance by international students with their F-1 status. F-1 students who fail to maintain or comply with the conditions of the nonimmigrant status in which they were admitted are removable (deportable) under the Immigration and Nationality Act ("INA") 237(a)(1)(C)(i).

2.       On or about April 4, 2025, the United States Department of Homeland Security ("DHS") began to unilaterally terminate the F-1 student status of numerous students throughout the United States in the SEVIS.[1] DHS did not provide the students or their schools any meaningful explanation for why their F-

---

[1] Elizabeth Román, *5 Umass Amherst Students Have Visas Revoked*, New Hampshire Public Radio (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall & Esmeralda Perez, *Five USCD Students' Visas Revoked and Additional Person Deported, University Confirms*, CBS 8 (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, *Feds Quietly Revoke Visas of Multiple UMass, Harvard students*, Boston.com (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

1 student status was terminated. What seems to connect many students targeted by this newfound and unlawful policy is that they had an encounter with some American law enforcement official at some point in the past, no matter how innocuous.

3.     Plaintiff Jean Kashikov is among those students. Plaintiff is a nonimmigrant graduate who, as an F-1 student, is currently within his optional practical training period (OPT). Mr. Kashikov resides in the Matanuska-Susitna Borough. He graduated from the University of Alaska Anchorage (UAA) in December 2024 with degrees in Mathematics and Professional Piloting and is currently participating in OPT as a flight instructor.  He has fully complied with all the requirements necessary to maintain his F-1 status.

4.     Plaintiff's dream of finishing his studies and launching his aeronautical career is now in severe jeopardy because of Defendants' decision to abruptly terminate his F-1 student status in SEVIS without notifying him—or his school—of the reasons for this termination and without providing him with an opportunity to contest the termination.

5.     Instead of being notified by DHS or another government agency, Plaintiff received an email from UAA informing him that the school learned during its periodic check of SEVIS records that Plaintiff's student status had been terminated.

6. The reason for termination, as recorded in SEVIS, was "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

7. Plaintiff's school was not able to provide any additional information as to why Plaintiff's student status was terminated.

8. In light of DHS's unilateral termination of Plaintiff's F-1 student status under SEVIS without sufficient notice and explanation, Plaintiff's ability to continue to work as a paid flight instructor and pursue post-graduate opportunities in the United States has been severely disrupted. Moreover, he may face immediate detention and deportation. Having and maintaining F-1 student status is critical because it can serve as a form of relief and defense in removal proceedings.

9. At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard before Plaintiff's F-1 student status was cancelled in SEVIS. *See Arizmendi-Medina v. Garland,* 69 F.4th 1043, 1055 (9th Cir. 2023) (The "touchstone of due process is notice and an opportunity to be heard."). *See also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"). No such process was provided here.

10.    To be clear, Plaintiff does not challenge the revocation of his F-1 ***visa*** in this case.    Plaintiff brings this lawsuit to challenge Defendants' unlawful termination of his F-1 ***student status*** in SEVIS.

11.    There is a difference between an F-1 student visa and F-1 student status. The F-1 student visa refers only to the document that grants permission for a noncitizen to *enter* the United States, whereas F-1 student status*,* which is what is tracked in SEVIS, refers to that student's formal immigration classification in the United States *after* they have entered.

12.    The revocation of an F-1 visa does ***not*** constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in SEVIS. *See* 8 C.F.R. § 214.1(d). Similarly, merely being identified in a criminal records check does not constitute a failure to maintain status. *See* 8 C.F.R. § 214.1(g).

13.    Instead, DHS's ability to terminate F-1 student status under SEVIS "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status in SEVIS only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. In other words, under this regulation, the

revocation of an F-1 visa does not provide a legal basis to terminate F-1 student status under the SEVIS system.

14. DHS's own policy guidance confirms that "[v]isa revocation is **not**, in itself, a cause for termination of the student's SEVIS record." U.S. Immigration and Customs Enforcement, *Policy Guidance 1004-04 – Visa Revocations* (June 7, 2010) (emphasis added).[2] Rather, if the visa is revoked, the student is permitted to continue their course of study or post-graduate training, and it is only upon departure from the United States that their SEVIS record is terminated. After that occurs, the student would need to obtain a new visa from a consulate or embassy abroad if they wish to re-enter the United States. *See* U.S. Department of State, *Guidance Directive 2016-03, 9 FAM 403.11-3: VISA REVOCATION* (Sept. 12, 2016).[3]

15. In other words, if DHS wishes to terminate F-1 student status under SEVIS after (or independent of) revoking an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

---

[2] U.S. Immigration and Customs Enforcement, Student and Exchange Visitor Program, Subject: Policy Guidance 1004-04-Visa Revocations, *available at* https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[3] U.S. Dep't of State, Guidance Directive 2016-03, 9 FAM 403.11-3—VISA REVOCATION, *available at* https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

## JURISDICTION AND VENUE

16.     Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (federal defendant), and 5 U.S.C. § 702 (right of review).

17.     Venue in this judicial district is proper under 28 U.S.C. § 1391 because this is a civil action in which an agency of the United States and its officer(s) are acting in their official capacity, 28 U.S.C. § 1391(e), and Plaintiffs reside or are registered within the geographical limits of the state of Alaska, 28 U.S.C. § 1391(c)(1).

18.     This Court is authorized to grant the requested relief under 5 U.S.C. § 706, 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1651, and the Court's equitable powers.

## PARTIES [4]

19.     **Plaintiff Jean Kashikov** is a 24-year-old graduate of UAA. He is a citizen of Kazakhstan. He initially entered the United States on an F-1 visa in August 2019 and currently resides in Wasilla. Kashikov earned a Bachelor of Sciences in Mathematics, *magna cum laude*, in May 2024, and an Associate of Applied Science in Professional Piloting, *magna cum laude*, in December 2024. Before his F-1 status was terminated, he was self-employed as a flight instructor under Optional Practical Training (OPT), temporary employment that is directly related to an F-1 student's major area of study. He planned on accruing enough

---

[4] A declaration from Plaintiff verifying the facts in this complaint is attached as Exhibit A.

Kashikov v. Noem
*Kashikov v. Noem*
COMPLAINT Page **7** of **22**

flight hours through his OPT period to qualify for a high-level airplane pilot position.

20.    **Defendant Kristi Noem** is the Secretary of the Department of Homeland Security ("DHS"). She is sued in her official capacity.

21.    **Defendant Todd Lyons** is the Acting Director of the Immigration and Customs Enforcement ("ICE"), a component of DHS. He is sued in his official capacity.

## FACTS

### Background on F-1 Student Visa and Status

22.    Under the INA, noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Admitted students living abroad enter the United States on an F-1 visa issued by the U.S. Department of State, and, once they enter, they are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as "engaging in authorized practical training following complete of studies." DHS's Student and Exchange Visitor Program ("SEVP") administers the F-1 student program and tracks information on students with F-1 student status.

23.    An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an

application for School Certification through the SEVIS system, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3.

24.    Each school that sponsors F-1 students has a Designated School Official ("DSO") who monitors, advises, and oversees the students attending that school.

25.    F-1 students must maintain a full course of study while enrolled. 8 C.F.R. § 214.2(f)(5-6). After completing their studies, F-1 status allows recent graduates to remain in the United States while engaging in authorized practical training in approved employment settings. *See generally* 8 C.F.R. § 214.2(f)(10). This includes Optional Practical Training ("OPT"), which consists of temporary employment that is "directly related to the student's major area of study." 8 C.F.R. § 214.2 (f)(10)(ii). OPT usually occurs at the end of the student's course of study (i.e., after graduation) and must be completed within 14 months of completing degree requirements. 8 CFR 214.2(f)(10)(ii)(A)(3).

26.    Once a student has completed their course of study and any accompanying OPT, they generally have sixty days to either depart the United States or transfer to another accredited academic institution. 8 C.F.R. § 214.2 (f)(5)(iv). If a student has been approved to transfer to another school (including to pursue a higher degree), they are authorized to remain in the United States for up to five months while awaiting matriculation at the transfer institution. 8 C.F.R

§ 214.2(f)(8)(i). If a student voluntarily withdraws from the F-1 program, "he or she has fifteen days to leave the United States." *Id.* Finally, a student "who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," *id.*, must leave the country immediately or seek reinstatement of their status.

### Background on Termination of F-1 Student Status

27.     Termination of F-1 student status in SEVIS is governed by SEVP regulations. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status." *See* 8 C.F.R. § 214.2(f).

28.     Students fail to maintain their F-1 student status when they do not comply with the regulatory requirements of F-1 status. 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status." DSOs at schools must report to SEVP, via SEVIS, when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2).

29.     DHS's ability to initiate the termination of F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system ***only***

when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *See* 8 C.F.R. § 214.1(d).

30.     Accordingly, the revocation of an F-1 visa does ***not*** constitute a failure to maintain F-1 student status and otherwise cannot serve as a basis for agency-initiated termination of F-1 student status in SEVIS. The F-1 student status in SEVIS may not be terminated simply because of visa revocation *after* a student has been admitted into the United States. In DHS's own words, "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *ICE Policy Guidance 1004-04 – Visa Revocations* (June 7, 2010).[5]

31.     Rather, if an F-1 visa is revoked after admission, the student is permitted to pursue their course of study, including OPT, uninterrupted. Once that student completes their study and/or OPT and departs from the United States, the SEVIS record would then be terminated, and the student would need to obtain a new visa from a consulate or embassy abroad before returning to the United States. *See Guidance Directive 2016-03, 9 FAM 403.11-3: VISA REVOCATION* (Sept. 12, 2016).[6]

---

[5] U.S. Immigration and Customs Enforcement, Student and Exchange Visitor Program, Subject: Policy Guidance 1004-04-Visa Revocations, *supra* at fn. 2.
[6] U.S. Dep't of State, Guidance Directive 2016-03, *supra* fn. 3.

32.     While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability (and the revocation of the visa) can expressly be contested in such proceedings. *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The immigration judge may also dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or reinstate to F-1 student status. *See* 8 C.F.R. § 1003.18(d)(ii).

33.     On the other hand, an Immigration Judge has no ability to review the termination of F-1 student status in SEVIS because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

34.     Students who have failed to maintain F-1 status may seek reinstatement. 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)). However, the termination of a SEVIS record represents final agency action for purposes of review under the Administrative Procedures Act (APA). *See Jie Fang*, 935 F.3d at 185.

## Factual Allegations

35.     **Jean Kashikov** is a 24-year-old graduate from UAA, where he earned a B.S. in Mathematics and an AAS in Professional Piloting, *magna cum laude*. He entered the United States on an F-1 visa in August 2019 and has maintained F-1 student status since then. After graduating with honors in December 2024, he was self-employed as a flight instructor under the Optional Practical Training (OPT). He planned on accruing enough flight hours through his OPT period to qualify for a high-level pilot position.

36.     On April 10, 2025, UAA informed Kashikov that his F-1 student status in SEVIS had been terminated. Specifically, he received an email stating: "I am terribly sorry to inform you that this morning, your record was marked as "terminated" by SEVP, indicating that the U.S. government believes you have violated your status. Please note that all employment authorization, including OPT, ends immediately when you fall out of valid status, and that unauthorized employment will make you ineligible for immigration reinstatement, so please cease any employment immediately." Exhibit B.

37.     On April 11, 2025, UAA provided Kashikov with the reason for termination reflected in SEVIS, which stated: "OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Exhibit C.

38.     Only conviction of certain crimes can lawfully form the basis for an F-1 status termination. *See* 8 C.F.R. § 214.1(g). Kashikov's criminal history cannot rise to a level adequate to merit termination of F-1 status because he has no prior convictions. In 2022, he was charged with disorderly conduct, obstruction of a highway or public thoroughfare, and criminal trespass in Scottsdale, Arizona, based upon an attempt to board a city bus that the driver alleged was out of service. All three charges were dismissed at the request of the city attorney. More recently, in August 2024, Kashikov received a traffic citation in Hahira, GA, for driving in

excess of the speed limit, which prosecutors dismissed *nolle prosequi*. Kashikov has never violated any immigration law or been convicted of any crimes.

39.    On April 11, 2025, Kashikov received an email from SEVP stating, "Your OPT authorization period has ended." Exhibit D. Although full-time students may continue with their studies even if they fail to maintain F-1 status, the same is not true for job training. Rather, "OPT is automatically terminated if an F-1 student fails to maintain F-1 status." *USCIS Policy Manual, Chapter 5-Practical Training, C. F-1 Student Optional Practical Training*.[7]

40.    On April 14, 2025 Kashikov received notice from the Department of State that his F-1 visa had been revoked. Exhibit E.[8] However, as noted earlier, revocation of an F-1 visa does ***not*** constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in SEVIS. *See* 8 C.F.R. § 214.1(d).

41.    Kashikov has complied with all rules and regulations governing someone with F-1 student status. He does not know why his F-1 student status in SEVIS was terminated.

42.    These terminations have put Plaintiff's career trajectory at risk. Kashikov is no longer able to gain flight instructor experience through OPT. Flight

---

[7] U.S. Citizenship and Immigration Services, Policy Manual, Vol. 2-Nonimmigrants, Part F-Students (F,M),  https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-5.

[8] Additionally, the expiration date cited on the Department of State's revocation notice of Plaintiff's F-1 visa was incorrect.

hours are the primary measure of pilot experience, and Kashikov expected to be able to log a considerable amount of flight hours during the high-season summer months in Alaska, which typically provide substantially more favorable weather conditions than the fall and winter months in the state. As OPT must be completed within 14 months of degree completion, Kashikov is at risk of losing his only summer-season in Alaska to accrue flight hours, severely undermining his goal of accruing enough flight time to qualify as a high-level pilot position. If he were required to return to Kazakhstan, he would face significant barriers in accruing flight hours because his FAA flight instructor certificate is not recognized in Kazakhstan and because the general aviation and flight instruction sectors are virtually non-existent in Kazakhstan.

43.     Plaintiff's status termination also puts him at serious risk of immediate arrest and detention for removal proceedings—an outcome other students have already faced.[9]

44.     The unlawful termination of Plaintiff's F-1 status is part of a clear policy and pattern/practice, whether written or not, perpetuated by Defendants to cancel the status of thousands of foreign students nationwide. Since April 5, 2025,

---

[9] *See, e.g.*, *Ozturk v. Trump*, No. 25-cv-10695-DJC, ___ F. Supp. 3d ___, 2025 LEXIS 64831, 2025 WL 1009445 (D. Mass. Apr. 4, 2025).

*Inside Higher Ed*, an industry publication, had documented more than 1,700 status terminations at over 265 colleges and universities nationwide.[10]

45.    The timing and uniformity of these terminations leave little question that DHS has adopted a nationwide policy, whether written or not, of mass termination of student statuses in SEVIS.

46.    These unlawful cancellations have been the subject of numerous lawsuits around the country, and Federal District Courts in New Hampshire, the Eastern District of New York, Massachusetts, the District of Columbia, the Central District of California, the Western District of Wisconsin, and the Northern District of Georgia have all issued temporary restraining orders similar to the one sought here, and on a similar legal theory.[11]

---

[10] Ashley Mowreader, *What We've Learned So Far From Tracking Student Visa Data,* Insider Higher Ed (Apr. 21, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/21/five-key-takeaways-tracking-student-visa; Ashley Mowreader, *International Student Visas Revoked,* Inside Higher Ed, https://www.insidehighered.com/news/global/international-students-us/2025/04/07/where-students-have-had-their-visas-revoked (last visited April 22, 2025).

[11] *See* Order, *Liu v. Noem,* No. 25-cv-133 (D.N.H. April 10, 2025), ECF No. 13; Temporary Restraining Order, *Wu v. Lyons,* No. 25-cv-01979 (E.D.N.Y. April 11, 2025), ECF No. 9; Temporary Restraining Order, *Zheng v. Lyons,* No. 25-cv-10893 (D. Mass April 11, 2025), ECF No. 8; Order Granting Plaintiff's Application for Temporary Restraining Order, *Zhou v. Lyons,* No. 2:25-cv-02994 (C.D. Cal. April 15, 2025), ECF No. 19; Memorandum Opinion, *Hinge v. Lyons,* No. 25-cv-1097 (D.D.C. April 15, 2025), ECF No. 10; Opinion and Order, *Isserdasani v. Noem,* No. 25-cv-283 (W.D. Wis. April 15, 2025), ECF No. 7; Order, *Doe v. Bondi,* No. 25-cv-01998 (N.D. Ga. April 18, 2025), ECF No. 23.

## CLAIMS FOR RELIEF

### COUNT 1
### Violation of Fifth Amendment – Procedural Due Process
### (F-1 Student Status Terminations)

47.     The foregoing allegations are realleged and incorporated herein.

48.     The United States Constitution requires notice and a meaningful opportunity to be heard before being deprived of rights and interests that can be withdrawn only for cause by law. *See Arizmendi-Medina v. Garland,* 69 F.4th 1043, 1055 (9th Cir. 2023).

49.     8 C.F.R. § 214.1(d), provides the specific causes for which an immigrant student's F-1 status can be terminated by DHS.

50.     Defendants terminated Plaintiff's F-1 student status under SEVIS (i) without notifying him of the termination decision and the reasons for it; (ii) without providing him with the adverse evidence that the government relies upon and an opportunity to confront and respond to such evidence; and (iii) without providing him an individualized hearing before an impartial adjudicator.

51.     Defendants' disregard for complying with well-established due process principles violated Plaintiff's constitutional rights under the U.S. Constitution, amendment V.

### COUNT 2
### Violation of Administrative Procedure Act and *Accardi* Doctrine
### (Unlawful Terminations of Plaintiff's F-1 Student Status)

52.     The foregoing allegations are realleged and incorporated herein.

53.     Defendants' termination of Plaintiff's F-1 student status under SEVIS represents a final agency action for purposes of review under the Administrative Procedure Act (APA). *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decision-making process and is therefore a final order[.]").

54.     Defendants' termination of Plaintiff's F-1 student status under SEVIS violates the APA and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, in excess of statutory jurisdiction, and in violation of the *Accardi* doctrine and federal agencies' own rules. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (establishing that an agency must abide by its own regulations, when the Government has promulgated "[r]egulations with the force and effect of law.")

55.     Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate Plaintiff's F-1 student status in SEVIS based simply on revocation of a visa. Additionally, nothing in Plaintiff's criminal history, academic record, or other applicable history or record provides a statutory or regulatory basis for termination or even for determining that Plaintiff failed to maintain his F-1 status.

56.     In making its determination that Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiff's individual circumstances, nor did it provide any explanation, let alone reasoned explanation,

Case 3:25-cv-00081-HRH     Document 1     Filed 04/23/25     Page 18 of 22

justifying its determination. As a result, Defendants arbitrarily and capriciously terminated Plaintiff's F-1 student status under SEVIS.

57. Moreover, Defendants terminated Plaintiff's F-1 student status under SEVIS without affording him meaningful notice and an opportunity to be heard, contrary to Plaintiff's constitutional right to procedural due process.

58. Therefore, Defendants' termination of Plaintiff's F-1 student status under SEVIS is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C.A. § 706(2). It is also not in accordance with DHS's own rules.

## COUNT 3
### Violation of Fifth Amendment – Procedural Due Process
### (Potential – or Risk of -- Unlawful Detention)

59. The foregoing allegations are realleged and incorporated herein.

60. The Fifth Amendment requires a fair, pre-deprivation process when a person's liberty hangs in the balance.

61. In light of the unlawful termination of Plaintiff's F-1 student status under SEVIS, Plaintiff is at risk of abrupt arrest and detention by Immigration & Customs Enforcement (ICE) without prior notice.

62. Plaintiff has ensured that he has complied with all rules for the F-1 program and has, by all accounts, fully participated in his courses of study and OPT. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration

*Kashikov v. Noem*
COMPLAINT Page **19** of **22**

detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court:

1) Assume jurisdiction over this matter;

2) Enter judgment in favor of Plaintiff and against Defendants;

3) Declare that Defendants Noem's and Lyons's termination of Plaintiff's F-1 student status in SEVIS without affording him sufficient notice and opportunity to be heard violated his Fifth Amendment procedural due process rights;

4) Declare that Defendants Noem's and Lyons's termination of Plaintiff's F-1 student status in SEVIS violated the Administrative Procedure Act (including under 8 C.F.R. § 214.1(d));

5) Issue a temporary restraining order, followed by a preliminary and permanent injunction, as to Defendants Noem and Lyons:

    a. requiring them to restore Plaintiff's valid F-1 student status in SEVIS;

    b. requiring them to set aside the F-1 student status termination decision as to Plaintiff;

    c. prohibiting them from terminating Plaintiff's F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an

impartial adjudicator, in which Plaintiff will be entitled to review any adverse evidence and respond to such evidence prior to Defendants' ability to determine anew that Plaintiff's F-1 student status should be terminated;

6) Issue a temporary restraining order, followed by a preliminary and permanent injunction, as to all Defendants:

    a. prohibiting them from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiff's counsel as well as time to contest any such action;

    b. prohibiting them from initiating removal proceedings against or deporting Plaintiff on the basis of the termination of his F-1 student status;

7) Award Plaintiff attorney fees and other litigation costs pursuant to the Equal Access to Justice Act and/or any other applicable law; and

8) Grant such further relief as the Court deems just and proper.

Respectfully submitted this 23 day of April, 2025.

*/s/ Nicolas Olano*
Nicolas Olano (AK Bar # 2105042)
Nations Law Group
2525 Blueberry Road, Ste 207
Anchorage, AK 99503

nicolas@nationslawak.org
907-770-0909

/s/Cindy Woods

Cindy Woods (NY Bar #5394226)
 (*pro hac vice* forthcoming)
ACLU of Alaska Foundation
1057 W. Fireweed Lane, Ste 207
Anchorage, AK 99503
cwoods@acluak.org
907-258-0044

*Counsel for Plaintiff*