**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JEAN KASHIKOV,                )
                              )
                   Plaintiff, )
                              )
        vs.                   )
                              )
KRISTI NOEM, in her official capacity as      )
Secretary of the U.S. Department of Homeland  )
Security and TODD LYONS, in his official      )
capacity as Acting Director of U.S.           )
Immigration and Customs Enforcement,          )
                              )
                              )    No. 3:25-cv-00081-HRH
                   Defendants.)
_____)

O R D E R

Motion for Attorneys' Fees under EAJA[1]

Plaintiff requests an award of attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Defendants oppose the request.[2] Plaintiff filed a reply.[3] Oral argument would not be of assistance to the court.

---

[1]Docket No. 25.

[2]Docket No. 29.

[3]Docket No. 32.

ORDER – Motion for Attorneys' Fees                                              - 1 -

Procedural History and Background[4]

Plaintiff seeks fees and costs for the legal work performed by his attorneys in challenging the termination of his student visa status, which is referred to in the parties' filings as a termination of his "SEVIS record." SEVIS (Student and Exchange Visitor Information System) is the system that maintains information on students who are in the United States to attend school on F-1 and M-1 student visas.

In early April 2025, plaintiff learned that the Department of Homeland Security (DHS) had terminated his SEVIS record and thereby his F-1 student status. He had no prior notice and no opportunity to be heard regarding the termination. The basis for the termination was listed in the paperwork as "OTHER Individual identified in criminal records check and/or has had their VISA revoked."[5] Plaintiff also learned that, in addition to his SEVIS record, his F-1 visa itself had been revoked. While the revocation of the F-1 visa was not of immediate concern, because it affected only his actual entry and reentry into the country, the termination of his SEVIS record and F-1 student status affected his ability to participate in official post-study training. It also put him at risk of deportation.

Plaintiff filed suit to challenge the termination. He alleged that the government's termination of his SEVIS record violated his constitutional right to due process and amounted to an arbitrary and capricious administrative action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2). He sought declaratory and injunctive relief and filed for a temporary restraining order.

---

[4]The background facts are taken from the complaint (Docket No. 1) and the stipulation for dismissal (Docket No. 23).

[5]Docket No. 1 at 4.

ORDER – Motion for Attorneys' Fees - 2 -

In support of his claims, plaintiff argued that there was no legal basis for his SEVIS record termination. Under the applicable regulations, DHS may initiate the termination of a student's SEVIS record when: (1) a previously granted waiver is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). A student may also lose his or her F-1 student status based on a "failure to maintain" that status. The regulations set forth certain conduct by the student visa holder that constitutes a "failure to maintain status." 8 C.F.R. § 214.1(e)-(g). Such conduct includes being convicted of a crime of violence with a potential sentence of more than a year. 8 C.F.R. § 214.1(g).

DHS provided no basis under § 214.1(d) for initiating the termination of plaintiff's status, nor was there support for the conclusion that plaintiff had otherwise failed to maintain his status. While plaintiff's name turned up in a search of a national criminal record database due to an encounter he had in 2022 that lead to charges of disorderly conduct, obstruction, and criminal trespass, all charges were dismissed. Under the regulations, there must be a criminal conviction on record to warrant a finding that plaintiff had not maintained his legal status, which was not present here.

The court issued a non-opposed temporary restraining order after DHS indicated it was working to have plaintiff's SEVIS record restored.[6] The parties thereafter agreed to a stipulated dismissal.[7] Pursuant to the stipulation, plaintiff's SEVIS record has been reactivated. The parties agree that reactivation is to be considered retroactive to the date of its initial termination so that there will be no gap in plaintiff's legal status and so that plain-

---

[6]Docket No. 11

[7]Docket No. 23.

tiff can continue his practical training program. DHS agreed that it will not terminate plaintiff's SEVIS record based solely on a criminal records search. DHS also agreed that the termination and reactivation of plaintiff's SEVIS record would not have a negative impact on any future immigration benefit, and that DHS will cooperate with plaintiff's counsel to ensure that immigration officials are aware of the parties' stipulation and terms. Plaintiff reserved the right to seek attorneys' fees.

Discussion

Under the EAJA, a plaintiff is entitled to attorneys' fees and costs if: (1) he is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable. 28 U.S.C. § 2412(d). The parties dispute whether these three factors have been met.

Prevailing Party

Under applicable case law applying the EAJA, and other civil rights statutes awarding plaintiffs attorneys' fees and costs based on "prevailing party" status, a plaintiff prevails if he obtains relief on the merits of the claim that materially alters the legal relationship of the parties. Perez-Arellano v. Smith, 279 F.3d 791, 794 (9th Cir. 2002), as amended (Feb. 21, 2002).[8] The Ninth Circuit has rejected the suggestion that a plaintiff prevails only when he or she receives a favorable judgment or enters into a court-supervised consent decree. Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 n.5

---

[8]Cases interpreting other civil rights statutes that provide for fee-shifting based on "prevailing party" status are applicable to the EAJA. Perez-Arellano, 279 F.3d at 792-93.

ORDER – Motion for Attorneys' Fees - 4 -

(9th Cir. 2002). Instead, the touchstone is whether the legal relationship is materially altered, which occurs when the "plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1118 (9th Cir. 2000) (quoting Farrar v. Hobby, 506 U.S. 103, 113 (1992)). There must be a legally enforceable judgment or settlement agreement pursuant to which the plaintiff can require "the defendant to do something he otherwise would not have to do." Id.

     A party is not entitled to prevailing party status when the lawsuit was merely the catalyst for the government's voluntary change of conduct and the lawsuit is subsequently dismissed as moot. Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 604-05 (2001). Such a situation lacks the necessary judicial imprimatur. The Supreme Court recently reaffirmed this precedent in Lackey v. Stinnie, 145 S. Ct. 659 (2025). In that case, the plaintiffs had obtained a preliminary injunction prohibiting the enforcement of a Virginia statute. The Virginia legislature then repealed the statute and the parties agreed that the action had become moot. Thus, no permanent injunction was ever granted. In denying the plaintiffs attorneys' fees, the Court noted that the trial court's issuance of a preliminary injunction did not make the plaintiffs the prevailing party because it was only "temporary success at an intermediary stage of the suit" and not enduring relief. Id. at 668-69. It then held that while the plaintiffs ultimately obtained enduring relief after the legislature repealed the challenged statute, they did not prevail in the action for purposes of awarding attorneys' fees because there was no judicial involvement in bringing about that relief: "A plaintiff who wins a transient victory on a preliminary injunction does not become a 'prevailing party' simply because external events convert the transient victory in a lasting one." Id. at 669. There must be judicially enforceable relief that alters the legal relationship between the parties.

ORDER – Motion for Attorneys' Fees     - 5 -

Here, the parties resolved the case through a stipulated dismissal. DHS asserts that this stipulated dismissal was the result of the government's voluntary change in policy without judicial involvement, and thus, under Lackey, plaintiffs are not the prevailing party. This case, however, is distinguishable from Lackey. Plaintiff's lawsuit was not mooted simply by a change in policy. It was resolved through an agreement between the parties, which was filed with the court and provided plaintiff with his requested relief.

DHS asserts that while there was an agreement here, it did nothing more than reflect a change in DHS's policy. Through this change in policy, DHS decided to reinstate F-1 visa status to those students who had theirs summarily terminated in early 2025 based solely on a check of the National Crime and Information Center database. DHS asserts that this resolution requires no further action or supervision by the court. Contrary to DHS's assertion, the agreement did more than just memorialize the change in DHS's policy and the voluntary reinstatement of plaintiff's SEVIS record. It in fact requires DHS "to do something it would otherwise would not be required to do." Fischer, 214 F.3d at 1118. Under the stipulation, DHS must treat the reinstatement as retroactive so that there is no gap in plaintiff's status. It must also cooperate with plaintiff's attorney as needed to ensure that the termination and reinstatement of plaintiff's F-1 student status does not negatively impact any future immigration benefit request. The stipulation also contemplates that this court maintains jurisdiction over attorneys' fees issues, which "provid[es] sufficient judicial oversight to justify an award of attorneys' fees and costs." Richard S. v. Dep't of Developmental Servs. of Cal., 317 F.3d 1080, 1087 (9th Cir. 2003) (quoting Barrios, 277 F.3d at 1134 n.5). Given these terms, the stipulated dismissal filed with the court was sufficient to constitute enduring judicially-sanctioned relief that materially alters the legal relationship between the parties, making plaintiff the prevailing party.

ORDER – Motion for Attorneys' Fees - 6 -

Government's Position

Under the EAJA, even if the plaintiff has prevailed, fees and costs must be denied if the government's position was "substantially justified." 28 U.S.C. § 2412(d)(1). When evaluating the government's "position" under the EAJA, courts consider both the government's litigation position and the "action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(1)(B). The government has the burden of defending its position based on the applicable law and facts. Ibrahim v. U.S. Dep't of Homeland Sec., 912 F.3d 1147, 1167 (9th Cir. 2019) (en banc).

Here, the government has failed to show that it had an adequate basis for terminating plaintiff's SEVIS record based on the applicable regulations. While plaintiff had been identified in a criminal records database search, as noted above, only certain convictions justify a finding that a student's status has lapsed. There was no DHS inquiry into the circumstances of plaintiff's criminal history, which would have revealed that he had no criminal convictions on his record. DHS made a sudden and unsupported decision to terminate plaintiff's student status and then backtracked on that decision when challenged. "[U]nreasonable agency action at any level entitles the litigant to EAJA fees." Id. (quoting Li v. Keisler, 505 F.3d 913, 919 (9th Cir. 2007)).

Reasonableness of Fee Request

The process for determining a reasonable fee under the EAJA is the same as that followed in cases awarding fees under 42 U.S.C. § 1988 and described in Hensley v. Eckerhart, 461 U.S. 424 (1983). Comm'r, INS v. Jean, 496 U.S. 154, 160-61 (1990). To calculate attorneys' fees, the court must begin by establishing the "lodestar" amount, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.

Hensley, 461 U.S. at 433-34.  Any "upward or downward adjustments are the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee." D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir.1990), overruled on other grounds by Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

Plaintiff seeks a lodestar amount of $35,686.19 for the work of three attorneys billing at a rate of $251.84 per hour and costs in the amount of $405.00.  DHS does not dispute the reasonableness of plaintiff's hourly rate of $251.84.  DHS contends that the work of three attorneys on a matter that was resolved after only a few weeks is excessive, and that the billing logs demonstrate duplicate efforts and unnecessary billing on their part.  Plaintiff counters that the bulk of his attorneys' hours were spent drafting a 22-page complaint and motion for a temporary restraining order with a 25-page supporting memorandum and preparing for the adversarial hearing, which was expected to be contested up to the day of the hearing itself.  The preparation for the hearing also required his attorneys to familiarize themselves with the other factually similar lawsuits filed on behalf of the hundreds of other students who had their student status suddenly revoked during that time period.  Plaintiff stresses that the billing records show that the attorneys' work was not duplicated.  It was divided so that one of his attorneys, Attorney Cindy Woods, did the majority of the research and drafting, with the other attorney, Attorney Nicolas Olano, providing review, edits, and strategy.  The third attorney billed for time spent on the matter as needed to cover for Attorney Cindy Woods during a week when she was absent.

Plaintiff's argument has merit.  The court concludes the hours billed were reasonable.  The circumstances were not as straightforward as DHS suggests.  This case evolved as part of a nationwide series of lawsuits based on the unprecedented termination of

student visas and student SEVIS records without warning or articulated reasons. A review of the billing records does not suggest any significant duplication of efforts or billing for overly administrative tasks. There is no basis for a downward adjustment as requested by DHS.

## Conclusion

Plaintiff's motion for attorneys' fees and costs[9] is granted. Plaintiff is awarded attorneys' fees in the amount of $35,686.19 and costs in the amount of $405.00.

DATED at Anchorage, Alaska, this 12th day of August, 2025.

/s/ H. Russel Holland
United States District Judge

---

[9]Docket No. 25.

ORDER – Motion for Attorneys' Fees - 9 -

Case 3:25-cv-00081-HRH    Document 33    Filed 08/12/25    Page 9 of 9